FILED

NOV 1 0 2021

U. S. DISTRICT COURT
EASTERN DISTRICT OF MO
ST. LOUIS

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

UNITED STATES OF AMERICA,    )
                             )
        Plaintiff,           )
                             )
v.                           )    No.  **4:21CR00603 RLW/NAB**
                             )
DIONNESHAE FORLAND,          )
    and                      )
DWAYNE TIMES,                )
                             )
        Defendants.          )

## INDICTMENT

The Grand Jury charges that:

## INTRODUCTION

At all times material to this Indictment, unless otherwise specified below:

### Defendants and Their Businesses

1.      Defendant DIONNESHAE FORLAND was a resident of Florissant, Missouri, within the Eastern District of Missouri.

2.      Defendant DWAYNE TIMES was a resident of Florissant, Missouri, within the Eastern District of Missouri.  TIMES was FORLAND's son.

3.      All About Family I was a non-profit corporation registered with the Missouri Secretary of State.  According to documents filed with the Missouri Secretary of State, FORLAND was the president and registered agent for All About Family I.

4.      Missouri Home Therapy, LLC was a corporation registered with the Missouri Secretary of State.  According to documents filed with the Missouri Secretary of State, FORLAND was the registered agent for Missouri Home Therapy.

5.      Missouri Home Health LLC was a corporation registered with the Missouri Secretary of State.  According to documents filed with the Missouri Secretary of State, FORLAND was the registered agent for Missouri Home Health.

6.      Missouri in Home Services, LLC was a corporation registered with the Missouri Secretary of State.  According to documents filed with the Missouri Secretary of State, FORLAND was the registered agent for Missouri in Home Services.

7.      A Great Place To Stay LLC was a corporation registered with the Missouri Secretary of State.  According to documents filed with the Missouri Secretary of State, TIMES was the organizer, and FORLAND was the registered agent, for A Great Place To Stay.

8.      Crew Hands was a corporation registered with the Missouri Secretary of State on or about July 27, 2020.  On or about January 28, 2021, a Statement of Change was filed with the Missouri Secretary of State, which statement made TIMES the registered agent for Crew Hands.

9.      Paycor, Inc. was a software company that provided human resources and payroll processing services for businesses.  Among its services, Paycor generated various payroll records reflecting names of employees, number of hours worked, and wages paid, among other types of related information, and prepared certain tax forms, including IRS Forms 940 and 941 reporting federal unemployment taxes, for its clients.  Paycor provided payroll processing services for Missouri in Home Services.

10.     U.S. Bank was a financial institution within the meaning of Title 18, United States Code, Sections 20 and 1344, the deposits of which are insured by the Federal Deposit Insurance Corporation.

**The Paycheck Protection Program**

11.     The United States Small Business Administration ("SBA") is an executive-branch

agency of the United States government that provides support to entrepreneurs and small businesses. The mission of the SBA is to maintain and strengthen the nation's economy by enabling the establishment and viability of small businesses and by assisting in economic recovery after disasters.

12.     The Coronavirus Aid, Relief, and Economic Security ("CARES") Act, Pub. L. No. 116-136, 134 Stat. 281 (2020), is a federal law that was enacted in or around March 2020 to provide emergency financial assistance to the millions of Americans suffering the economic impact caused by the COVID-19 pandemic. One source of relief provided for in the CARES Act is the authorization of forgivable loans to small businesses for job retention and certain other expenses, through the Paycheck Protection Program ("PPP"). The purpose of loans issued under the PPP was to enable small businesses suffering from the economic downturn to continue to pay salary or wages to their employees.

13.     To obtain a PPP loan, a qualifying business was required to submit a PPP loan application, signed by an authorized representative of the business. The PPP loan application required the business to acknowledge the program rules and make certain affirmative certifications to obtain the PPP loan.  In the PPP loan application (SBA Form 2483), the small business (through its authorized representative) was required to certify: (a) that the small business was in operation on February 15, 2020; (b) the average monthly payroll expenses; and (c) the number of employees. These certifications were used to calculate the amount of money the small business was eligible to receive under the PPP. In addition, businesses applying for PPP loans were required to submit documentation supporting their payroll expenses.

14.     A PPP loan application was then processed by a participating lender. If a PPP loan application was approved, the participating lender funded the loan using its own monies, which

were then guaranteed by the SBA.  Generally, in the event that the borrower defaulted on a PPP loan, the SBA would purchase the borrower's debt from the lending financial institution and take on the responsibility for paying back the loan.

15.     PPP loan funds were required to be used on certain permissible expenses, including payroll costs, mortgage interest, rent, and utilities for the business. In the PPP loan application (SBA Form 2483), the borrower must certify that "[a]ll SBA loan proceeds will be used only for business-related purposes as specified in the loan application and consistent with the Paycheck Protection Program Rule." In that same application, the borrower must also certify that "[t]he funds will be used to retain workers and maintain payroll or make mortgage interest payments, lease payments, and utility payments, as specified under the Paycheck Protection Program Rule." Under the applicable PPP rules and guidance, the interest and principal on the PPP loan was eligible for forgiveness if the business spent the loan proceeds on these expense items within a designated period of time and used a certain portion of the loan toward payroll expenses.

16.     Newtek Small Business Finance ("Newtek") was a participating lender and issued PPP loans guaranteed by the SBA.  Newtek processed applications for PPP loans submitted through an Internet-based web portal that was hosted on a server located in Arizona.

**The Missouri Small Business Grant Program**

17.     Another source of relief authorized in the CARES Act was the appropriation of federal funds to state governments, known as the Coronavirus Relief Fund, for use towards expenditures incurred due to the COVID-19 pandemic.

18.     The Missouri Department of Economic Development is an agency of the State of Missouri that administers programs encouraging economic growth and supporting businesses in Missouri.

19.     The Small Business Grant Program, administered by the Missouri Department of Economic Development, provided grants to small businesses and family-owned farms in Missouri for reimbursement of costs of business interruption caused by required closures, and other expenses incurred, in connection with the COVID-19 pandemic.  Grants awarded under the Small Business Grant Program were funded by the Coronavirus Relief Fund, as appropriated to the State of Missouri by the CARES Act.

## COUNTS I – III
## Wire Fraud (18 U.S.C. § 1343)

### The Scheme to Defraud

20.     Paragraphs 1 through 19 are realleged and incorporated by reference as if fully set forth herein.

21.     Beginning no later than in or about January 2021, and continuing through at least in or about May 2021, in the Eastern District of Missouri and elsewhere, the defendant,

**DIONNESHAE FORLAND**,

devised and intended to devise a scheme and artifice to defraud, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises.

### Manner and Means

#### *All About Family I*

22.     It was part of the scheme that, on or about January 16, 2021, FORLAND submitted and caused to be submitted a fraudulent PPP loan application on behalf of All About Family I to Newtek, with the intent to obtain loan proceeds from Newtek.

23.     It was further part of the scheme that FORLAND falsely represented on the PPP loan application that All About Family I had twenty employees, when in truth and fact, the company had no employees other than FORLAND.

24.     It was further part of the scheme that FORLAND falsely represented on the PPP loan application that the average monthly payroll for All About Family I was $58,450.

25.     It was further part of the scheme that FORLAND falsely claimed on the PPP loan application that she, as owner of All About Family I, was not "an owner of any other business, or have common management (including a management agreement) with any other business," when in truth and fact, FORLAND owned other businesses, including Missouri in Home Services, Missouri Home Therapy, and Missouri Home Health, for which she also submitted PPP loan applications.

26.     It was further part of the scheme that FORLAND falsely claimed that "[t]he funds will be used to retain workers and maintain payroll or make mortgage interest payments, lease payments, and utility payments," when in truth and fact, FORLAND did not intend to spend the loan funds on authorized expenses.

27.     It was further part of the scheme that FORLAND submitted and caused to be submitted with the PPP loan application for All About Family I materially false and fraudulent documents, including the following:

a.     A fraudulent IRS Form 940, purporting to be prepared by Paycor and reporting that All About Family I paid $701,405 in wages in 2019.  In truth and fact, FORLAND was the only employee of All About Family I, All About Family I had fewer payroll expenses, and Paycor did not generate the Form 940 for All About Family.

b.     Payroll records purporting to belong to All About Family I.  In truth and fact, All About Family I did not pay the payroll expenses reported in these records, and the payroll records were identical to records submitted with a PPP loan application for Missouri in Home Services, except that the name of the company had been altered to All About Family I.

c.      A bank statement that purported to belong to a bank account for All About Family I at U.S. Bank.  In truth and fact, the bank statement did not belong to a U.S. Bank account for All About Family I.  The bank statement was nearly identical to a statement for a bank account for Missouri in Home Services at U.S. Bank, except that the account holder and account number had been altered to instead reflect All About Family I, and the amount of payroll expenses reflected on the statement had been inflated.

28.     It was further part of the scheme that FORLAND used the name and signature of a Paycor employee, A.A., on the fraudulent IRS Form 940 and falsely represented that A.A. had signed the tax form, certifying that Paycor prepared the form for All About Family I, when in truth and fact, Paycor did not prepare the form, and A.A. had not signed the form.

29.     It was further part of the scheme that as a result of FORLAND's false and fraudulent representations in the PPP application she had submitted to Newtek, Newtek approved All About Family I's PPP loan application.

30.     It was further part of the scheme to defraud that FORLAND caused Newtek to disburse, on or about February 12, 2021, approximately $146,100 in a U.S. Bank account ending in -9782 in the name of All About Family I.

### *Missouri Home Therapy*

31.     It was further part of the scheme that, on or about January 16, 2021, FORLAND submitted and caused to be submitted a fraudulent PPP loan application on behalf of Missouri Home Therapy to Newtek, with the intent to obtain loan proceeds from Newtek.

32.     It was further part of the scheme that FORLAND falsely represented on the PPP loan application that Missouri Home Therapy had thirty employees.

33.     It was further part of the scheme that FORLAND falsely represented on the PPP

loan application that the average monthly payroll for Missouri Home Therapy was $60,000.

34.     It was further part of the scheme that FORLAND falsely claimed on the PPP loan application that she, as owner of Missouri Home Therapy, was not "an owner of any other business, or have common management (including a management agreement) with any other business," when in truth and fact, FORLAND owned other businesses.

35.     It was further part of the scheme that FORLAND falsely claimed that "[t]he funds will be used to retain workers and maintain payroll or make mortgage interest payments, lease payments, and utility payments," when in truth and fact, FORLAND did not intend to spend, and did not spend, the loan funds on authorized expenses.

36.     It was further part of the scheme that FORLAND submitted and caused to be submitted with the PPP loan application for Missouri Home Therapy fraudulent documents, including the following:

a.      A fraudulent IRS Form 1120S, reporting that Missouri Home Therapy paid $719,363 in wages in 2019, when in truth and fact, Missouri Home Therapy had fewer payroll expenses that year.

b.      A fraudulent IRS Form 940, purporting to be prepared by Paycor and reporting that Missouri Home Therapy paid $719,363 in wages in 2019, when in truth and fact, Missouri Home Therapy had fewer payroll expenses, and Paycor did not generate the Form 940 for Missouri Home Therapy.

c.      A bank statement that purported to belong to a bank account for Missouri Home Therapy at U.S. Bank.  In truth and fact, the bank statement did not belong to a U.S. Bank account for Missouri Home Therapy.  The bank statement was nearly identical to a statement for a bank account for Missouri in Home Services at U.S. Bank, except that the account holder and

account number had been altered to instead reflect Missouri Home Therapy, and the amount of payroll expenses reflected on the statement had been inflated.

37.     It was further part of the scheme that FORLAND used the name and signature of a Paycor employee, A.A., on the fraudulent IRS Form 940 and falsely represented that A.A. had signed the tax form, certifying that Paycor prepared the form for Missouri Home Therapy, when in truth and fact, Paycor did not prepare the form, and A.A. had not signed the form.

38.     It was further part of the scheme that as a result of FORLAND's false and fraudulent representations in the PPP application she had submitted to Newtek, Newtek approved Missouri Home Therapy's PPP loan application.

39.     It was further part of the scheme that FORLAND caused Newtek to disburse, on or about February 5, 2021, approximately $150,000 in a U.S. Bank account ending in -8993 in the name of Missouri Home Therapy.

### *Missouri Home Health*

40.     It was further part of the scheme that, on or about February 27, 2021, FORLAND submitted and caused to be submitted a fraudulent PPP loan application on behalf of Missouri Home Health to Newtek, with the intent to obtain loan proceeds from Newtek.

41.     It was further part of the scheme that FORLAND falsely represented on the PPP loan application that Missouri Home Health had ten employees.

42.     It was further part of the scheme that FORLAND falsely represented on the PPP loan application that the average monthly payroll for Missouri Home Health was $60,000.

43.     It was further part of the scheme that FORLAND falsely claimed on the PPP loan application that she, as owner of Missouri Home Therapy, was not "an owner of any other business, or have common management (including a management agreement) with any other business,"

when in truth and fact, FORLAND owned other businesses.

44.     It was further part of the scheme that FORLAND falsely claimed that "[t]he funds will be used to retain workers and maintain payroll or make mortgage interest payments, lease payments, and utility payments," when in truth and fact, FORLAND did not intend to spend and did not spend the loan funds on authorized expenses.

45.     It was further part of the scheme that FORLAND submitted and caused to be submitted with the PPP loan application for Missouri Home Health fraudulent documents, including the following:

a.      A fraudulent IRS Form 1120S, reporting that Missouri Home Health paid $719,363 in wages in 2019, when in truth and fact, Missouri Home Health had fewer payroll expenses that year.

b.      A fraudulent IRS Form 940, purporting to be prepared by Paycor and reporting that Missouri Home Health paid $719,363 in wages in 2019, when in truth and fact, Missouri Home Health had fewer payroll expenses that year, and Paycor did not generate a Form 940 for Missouri Home Health.

c.      A bank statement that purported to belong to a bank account for Missouri Home Health at U.S. Bank.  In truth and fact, the bank statement did not belong to a U.S. Bank account for Missouri Home Health.  The bank statement was nearly identical to a statement for a bank account for Missouri in Home Services at U.S. Bank, except that the account holder and account number had been altered to instead reflect Missouri Home Health, and the amount of payroll expenses reflected on the statement had been inflated.

46.     It was further part of the scheme that FORLAND used the name and signature of a Paycor employee, A.A., on the fraudulent IRS Form 940 and falsely represented that A.A. had

signed the tax form, certifying that Paycor prepared the form for Missouri Home Health, when in truth and fact, Paycor did not prepare the form and A. A. had not signed the form.

47.     It was further part of the scheme that as a result of FORLAND's false and fraudulent representations in the PPP application she had submitted to Newtek, Newtek approved Missouri Home Health's PPP loan application.

48.     It was further part of the scheme that FORLAND caused Newtek to disburse, on or about March 31, 2021, approximately $150,000 in a U.S. Bank account ending -2862 in the name of Missouri Home Health.

### *Executions of the Scheme*

49.     On or about the dates set forth below, in Florissant, Missouri, in the Eastern District of Missouri, the defendant,

**DIONNESHAE FORLAND,**

having devised and intended to devise a scheme to obtain money by means of materially false and fraudulent pretenses, representations, and promises, for the purpose of executing the scheme described above, caused to be transmitted by means of wire communication in interstate commerce the signals and sounds described below for each count, each transmission constituting a separate count:

| Count | Approx. Date | Summary | Loan Amount |
|-------|-------------|---------|-------------|
| I | January 16, 2021 | A wire communication from FORLAND's residence in Florissant, Missouri, to Newtek servers located outside of the state of Missouri, consisting of the PPP loan application submitted on behalf of All About Family I to Newtek | $146,100 |

| II | January 16, 2021 | A wire communication from FORLAND's residence in Florissant, Missouri, to Newtek servers located outside of the state of Missouri, consisting of the PPP loan application submitted on behalf of Missouri Home Therapy to Newtek | $150,000 |
| III | February 27, 2021 | A wire communication from FORLAND's residence in Florissant, Missouri, to Newtek servers located outside of the state of Missouri, consisting of the PPP loan application submitted on behalf of Missouri Home Health to Newtek | $150,000 |

All in violation of Title 18, United States Code, Section 1343.

## COUNT IV
### Wire Fraud (18 U.S.C. § 1343 and 2)

### Scheme to Defraud

50.     Paragraphs 1 through 19 are realleged and incorporated by reference as if fully set forth herein.

51.     In or around February 27, 2021, in the Eastern District of Missouri and elsewhere, the defendants,

### DIONNESHAE FORLAND and DWAYNE TIMES,

devised and intended to devise a scheme and artifice to defraud, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises.

### Manner and Means

52.     It was part of the scheme that, on or about February 27, 2021, FORLAND and TIMES submitted and caused to be submitted a fraudulent PPP loan application on behalf of A Great Place to Stay to Newtek, with the intent to obtain loan proceeds from Newtek.

53.     It was further part of the scheme that FORLAND and TIMES falsely represented

on the PPP loan application that A Great Place to Stay had ten employees.

54.     It was further part of the scheme that FORLAND and TIMES falsely represented on the PPP loan application that the average monthly payroll for A Great Place to Stay was $60,000.

55.     It was further part of the scheme that FORLAND and TIMES falsely claimed that "[t]he funds will be used to retain workers and maintain payroll or make mortgage interest payments, lease payments, and utility payments," when in truth and fact, FORLAND and TIMES did not intend to spend and did not spend the loan funds on authorized expenses.

56.     It was further part of the scheme that FORLAND and TIMES submitted and caused to be submitted with the PPP loan application for A Great Place to Stay fraudulent documents, including the following:

a.     A fraudulent IRS Form 1120S, reporting that A Great Place to Stay paid $719,363 in wages in 2019, when in truth and fact, A Great Place to Stay had fewer payroll expenses that year.

b.     A fraudulent IRS Form 940, purporting to be prepared by Paycor and reporting that A Great Place to Stay paid $719,363 in wages in 2019, when in truth and fact, Paycor did not generate the Form 940 for A Great Place to Stay and did not begin providing payroll processing services until in or around June 2021.

c.     A bank statement that purported to belong to a bank account for A Great Place to Stay at U.S. Bank.  In truth and fact, A Great Place to Stay did not have a U.S. Bank account.  The bank statement was nearly identical to a statement for a bank account for Missouri in Home Services at U.S. Bank, except that the account holder had been altered to instead reflect A Great Place to Stay, the account number had been altered, and the amount of payroll expenses

reflected on the statement had been inflated.

57.     It was further part of the scheme that FORLAND and TIMES used the name and signature of a Paycor employee, A.A., on the fraudulent IRS Form 940 and falsely represented that A.A. had signed the tax form, certifying that Paycor prepared the form for A Great Place to Stay, when in truth and fact, Paycor did not prepare the form.

58.     It was further part of the scheme that as a result of the false and fraudulent representations in the PPP application submitted to Newtek by FORLAND and TIMES on behalf of A Great Place to Stay, Newtek approved A Great Place to Stay's PPP loan application.

59.     It was further part of the scheme that FORLAND and TIMES caused Newtek to disburse, on or about May 11, 2021, approximately $150,000 in a PNC Bank account ending in -4365 in the name of TIMES.

60.     On or about February 27, 2021, in Florissant, Missouri, in the Eastern District of Missouri, the defendants,

**DIONNESHAE FORLAND** and **DWAYNE TIMES**,

aiding and abetting each other, for purposes of executing the scheme described above, caused to be transmitted by means of wire communication in interstate commerce certain signals and sounds namely, a wire communication from FORLAND's residence in Florissant, Missouri, to Newtek servers located outside of the state of Missouri, consisting of the PPP loan application submitted on behalf of A Great Place to Stay to Newtek.

In violation of Title 18, United States Code, Sections 1343 and 2.

## COUNT V
### Bank Fraud (18 U.S.C. § 1344(2))

### Scheme to Obtain Money

61.     Paragraphs 1 through 19 are realleged and incorporated by reference as if fully set

forth herein.

62.     In or around March 2021, in the Eastern District of Missouri and elsewhere, the defendant,

**DIONNESHAE FORLAND**,

devised and intended to devise a scheme and artifice to obtain moneys, funds, credits, assets, securities, and other property owned by, or under the custody and control of financial institutions, by means of materially false and fraudulent pretenses, representations, and promises.

**Manner and Means**

63.     It was part of the scheme that, on or about March 4, 2021, FORLAND submitted and caused to be submitted a fraudulent PPP loan application on behalf of Missouri in Home Services to U.S. Bank, with the intent to obtain loan proceeds from U.S. Bank.

64.     It was further part of the scheme that FORLAND falsely represented on the PPP loan application that the average monthly payroll for Missouri in Home Services was $58,450.

65.     It was further part of the scheme that FORLAND falsely claimed on the PPP loan application that she, as owner of Missouri in Home Services, was not "an owner of any other business, or have common management (including a management agreement) with any other business," when in truth and fact, FORLAND owned other businesses.

66.     It was further part of the scheme that FORLAND falsely claimed that "[t]he funds will be used to retain workers and maintain payroll or make mortgage interest payments, lease payments, and utility payments," when in truth and fact, FORLAND did not intend to spend and did not spend the loan funds on authorized expenses.

67.     It was further part of the scheme that FORLAND submitted and caused to be submitted with the PPP loan application for Missouri in Home Services fraudulent documents,

including the following:

      a.    Fraudulent IRS Forms 940 and 941, purporting to be prepared by Paycor and reporting that Missouri in Home Services paid a total of $701,405 in wages in 2019, when in truth and fact, Missouri in Home Services had fewer payroll expenses that year, and Paycor did not generate the forms.

      b.    Payroll records purporting to belong to Missouri in Home Services. In truth and fact, Missouri in Home Services did not pay the payroll expenses reported in these records, and the payroll records were identical to records submitted with a PPP loan application for All About Family I, except that the name of the company had been altered to Missouri in Home Services.

68.    It was further part of the scheme that FORLAND used the name and signature of a Paycor employee, A.A., on the fraudulent IRS Forms 940 and 941 and falsely represented that A.A. had signed the tax forms, certifying that Paycor prepared the forms for Missouri in Home Services, when in truth and fact, Paycor did not prepare the forms, and A.A. did not sign them.

69.    It was further part of the scheme that as a result of the false and fraudulent representations in the PPP application submitted to U.S. Bank by FORLAND on behalf of Missouri in Home Services, U.S. Bank approved the PPP loan application.

70.    It was further part of the scheme that FORLAND caused U.S. Bank to disburse, on or about March 4, 2021, approximately $146,125 in a bank account for Missouri in Home Services at U.S. Bank.

71.    On or about March 4, 2021, in Florissant, Missouri, in the Eastern District of Missouri, the defendant,

**DIONNESHAE FORLAND**,

executed and attempted to execute the scheme and artifice described above, to obtain moneys, funds, credits, assets, securities, and other property owned by, and under the custody and control of U.S. Bank, a financial institution, as defined in Title 18, United States Code, Section 20, by means of material false and fraudulent pretenses, representations, and promises, in that FORLAND submitted and caused to be submitted a fraudulent PPP loan application for approximately $146,125 on behalf of Missouri in Home Services to U.S. Bank, for the purpose of obtaining money, funds, credits, assets, securities, and other property owned by, and under the custody and control of U.S. Bank.

In violation of Title 18, United States Code, Section 1344(2).

## COUNT VI
## Theft of Government Property (18 U.S.C. §§ 641 and 2)

72. Paragraphs 1 through 19 are realleged and incorporated by reference as if fully set forth herein.

73. On or about July 27, 2020, TIMES caused Crew Hands to be registered as a corporation in the state of Missouri.

74. On or about July 28, 2020, FORLAND submitted and caused to be submitted a fraudulent Missouri Small Business Grant application on behalf of Crew Hands.

75. In the Missouri Small Business Grant application, FORLAND falsely represented that Crew Hands had been in operation since February 2017 and was in operation on March 1, 2020. FORLAND falsely also represented that Crew Hands had twenty-five employees.

76. FORLAND submitted with the Missouri Small Business Grant application fraudulent documents, including the following:

a. Payroll records purporting to belong to Crew Hands. In truth and fact, the records were nearly identical to Paycor payroll records belonging to Missouri Home Therapy, and

Paycor did not provide payroll processing services for Crew Hands.

        b.     Bank statements that purported to belong to a bank account for Crew Hands at U.S. Bank.  In truth and fact, Crew Hands did not have a U.S. Bank account.  The bank statement was nearly identical to a statements for a bank account for Missouri Home Therapy at U.S. Bank, except that the account holder had been altered to instead reflect Crew Hands.

77.     On or about November 18, 2020, FORLAND submitted and caused to be submitted a request for reimbursement to the Missouri Department of Economic Development on behalf of Crew Hands related to the company's Missouri Small Business Grant application.

78.     After submitting the request for reimbursement, FORLAND contacted the Missouri Department of Economic Development multiple times to inquire about the status of the reimbursement request for Crew Hands.

79.     On or about January 25, 2021, a Statement of Change of Registered Agent was filed with the Missouri Secretary of State, changing the registered agent for Crew Hands to TIMES.

80.     On or about January 28, 2021, in Florissant, Missouri, in the Eastern District of Missouri, the defendants,

**DIONNESHAE FORLAND** and **DWAYNE TIMES**,

aiding and abetting each other, willfully and knowingly stole and converted to their own use, or the use of another, money of the United States in the amount of $49,988, that is, a Missouri Small Business Grant funded by the Coronavirus Relief Fund and awarded to Crew Hands, in the form of an electronic deposit into a Regions Bank account ending in -4506 in the name of A Great Place to Stay.

In violation of Title 18, United States Code, Sections 641 and 2.

## COUNT VII
### Aggravated Identity Theft (18 U.S.C. § 1028A)

81.     Paragraphs 1 through 19 and 22 through 29 are realleged and incorporated by reference as if fully set forth herein.

82.     On or about January 16, 2021, in Florissant, Missouri, in the Eastern District of Missouri, the defendant,

### DIONNESHAE FORLAND,

did knowingly use, without lawful authority, a means of identification of another person during and in relation to a felony violation enumerated in Title 18, United States Code, Section 1028A(c), to wit, wire fraud, in violation of Title 18, United States Code, Section 1343, knowing that the means of identification belonged to another actual person, in that the defendant used the name and signature of A.A. in order to apply for and obtain a fraudulent PPP loan on behalf of All About Family I funded by Newtek, a financial institution within the meaning of Title 18, United States Code, Section 20, all without the knowledge or authorization of A.A.

In violation of Title 18, United States Code, Section 1028A(a)(1).

## COUNT VIII
### Aggravated Identity Theft (18 U.S.C. § 1028A)

83.     Paragraphs 1 through 19 and 31 through 39 are realleged and incorporated by reference as if fully set forth herein.

84.     On or about January 16, 2021, in Florissant, Missouri, in the Eastern District of Missouri, the defendant,

### DIONNESHAE FORLAND,

did knowingly use, without lawful authority, a means of identification of another person during and in relation to a felony violation enumerated in Title 18, United States Code, Section 1028A(c),

to wit, wire fraud, in violation of Title 18, United States Code, Section 1343, knowing that the means of identification belonged to another actual person, in that the defendant used the name and signature of A.A. in order to apply for and obtain a fraudulent PPP loan on behalf of Missouri Home Therapy funded by Newtek, a financial institution within the meaning of Title 18, United States Code, Section 20, all without the knowledge or authorization of A.A.;

In violation of Title 18, United States Code, Section 1028A(a)(1).

## COUNT IX
### Aggravated Identity Theft (18 U.S.C. § 1028A)

85.     Paragraphs 1 through 19 and 40 through 48 and are realleged and incorporated by reference as if fully set forth herein.

86.     On or about February 27, 2021, in Florissant, Missouri, in the Eastern District of Missouri, the defendant,

**DIONNESHAE FORLAND**,

did knowingly use, without lawful authority, a means of identification of another person during and in relation to a felony violation enumerated in Title 18, United States Code, Section 1028A(c), to wit, wire fraud, in violation of Title 18, United States Code, Section 1343, knowing that the means of identification belonged to another actual person, in that the defendant used the name and signature of A.A. in order to apply for and obtain a fraudulent PPP loan on behalf of Missouri Home Health funded by Newtek, a financial institution within the meaning of Title 18, United States Code, Section 20, all without the knowledge or authorization of A.A.;

In violation of Title 18, United States Code, Section 1028A(a)(1).

## COUNT X
### Aggravated Identity Theft (18 U.S.C. § 1028A)

87.     Paragraphs 1 through 19 and 51 through 59 are realleged and incorporated by

reference as if fully set forth herein.

88.     On or about February 27, 2021, in Florissant, Missouri, in the Eastern District of Missouri, the defendant,

**DIONNESHAE FORLAND**,

did knowingly use, without lawful authority, a means of identification of another person during and in relation to a felony violation enumerated in Title 18, United States Code, Section 1028A(c), to wit, wire fraud, in violation of Title 18, United States Code, Section 1343, knowing that the means of identification belonged to another actual person, in that the defendant used the name and signature of A.A. in order to apply for and obtain a fraudulent PPP loan on behalf of A Great Place to Stay funded by Newtek, a financial institution within the meaning of Title 18, United States Code, Section 20, all without the knowledge or authorization of A.A.

In violation of Title 18, United States Code, Section 1028A(a)(1).

### COUNT XI
### Aggravated Identity Theft (18 U.S.C. § 1028A)

89.     Paragraphs 1 through 19 and 63 through 69 are realleged and incorporated by reference as if fully set forth herein.

90.     On or about March 4, 2021, in Florissant, Missouri, in the Eastern District of Missouri, the defendant,

**DIONNESHAE FORLAND**,

did knowingly use, without lawful authority, a means of identification of another person during and in relation to a felony violation enumerated in Title 18, United States Code, Section 1028A(c), to wit, bank fraud, in violation of Title 18, United States Code, Section 1344, knowing that the means of identification belonged to another actual person, in that the defendant used the name and signature of A.A. in order to apply for and obtain a fraudulent PPP loan on behalf of Missouri in

Home Services funded by Newtek, a financial institution within the meaning of Title 18, United

States Code, Section 20, all without the knowledge or authorization of A.A.

In violation of Title 18, United States Code, Section 1028A(a)(1).

## FORFEITURE ALLEGATION

The Grand Jury further finds by probable cause that:

1.     Pursuant to Title 18, United State Code, Section 981(a)(1)(C) and Title 28, United

States Code, Section 2461, upon conviction of an offense in violation of Title 18, United States

Code, Section 1343, as set forth in Counts I – IV, or upon conviction of an offense in violation of

Title 18, United States Code, Section 641, as set forth in Counts VI, the Defendant(s) shall forfeit

to the United States of America any property, real or personal, which constitutes or is derived from

proceeds traceable to such violation(s).  Subject to forfeiture is a sum of money equal to the total

value of any property, real or personal, constituting or derived from any proceeds traceable to such

violation(s), which is at least $604,350.24.

2.     Pursuant to Title 18, United States Code, Section 982(a)(2), upon conviction of an

offense in violation of Title 18, United States Code, Section 1344, as set forth in Count V, the

Defendant shall forfeit to the United States of America any property constituting, or derived from,

proceeds obtained, directly or indirectly, as a result of such violation.  Subject to forfeiture is a

sum of money equal to the total value of property, real or personal, constituting or derived from

any proceeds traceable to such violation, which is at least $146,125.

3.     Specific property subject to forfeiture includes, but is not limited to, the following:

a.     Approximately $247,243.10 seized from the bank account ending in -0038

in the name of All About Family I at Midwest BankCentre;

b.     Approximately $250,000.00 seized from the bank account ending in -0020

in the name of All About Family I at Midwest BankCentre;

   c.  Approximately $91,500.12 seized from the bank account ending in -3044 in the name of A Great Place to Stay at PNC Bank; and

   d.  Approximately $5,188.56 seized from a bank account ending in -4365 in the name of TIMES at PNC Bank.

   4.  If any of the property described above, as a result of any act or omission of the Defendants:

   a.  cannot be located upon the exercise of due diligence;

   b.  has been transferred or sold to, or deposited with, a third party;

   c.  has been placed beyond the jurisdiction of the court;

   d.  has been substantially diminished in value; or

   e.  has been commingled with other property which cannot be divided without difficulty,

the United States of America will be entitled to the forfeiture of substitute property pursuant to Title 21, United States Code, Section 853(p).

         A TRUE BILL.


         _____

         FOREPERSON

SAYLER A. FLEMING
United States Attorney


_____
JONATHAN A. CLOW, #68003MO
Assistant United States Attorney